You think you're all prepared and you bring down all of this and I realized I didn't bring the order, which, and we thank you for doing that, for agreeing to the division of time. And because of the extra time allotted, we hope that you will kind of stick to what you've agreed to. So if the clerk would call the case. Case number 14-3884, consolidated 15-0162 and 15-1573. Fraternal Order of Police Lodge No. 7 v. City of Chicago. All right. And when you're presenting your oral argument, please speak up. The microphone, as I'm sure you know, records but doesn't amplify.            Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.     Thank you. Thank you. Thank you.        Thank you.  Bye. Bye. Good-bye. Good-bye. Good-bye. Good-bye. Good-bye. Good-bye. Good-bye. 病 and need to take care of. We've been able to advance the CBAs by requiring the city to destroy records that are subject to outstanding FOIA requests. And such an award would be unenforceable, as against public policy, requiring disclosure of records in the city's possession at the time of a request in the absence of an exemption in the FOIA statute. And indeed, any likelihood of success in obtaining the union's request of remedy is even further diminished now that the arbitrators have ruled that the CBA provisions are unenforceable, as against public policy. And that public policy seems to be the action of the Department of Justice was the primary public policy cited, is that correct? That's correct. At this point? With respect to the FOP arbitration, that was essentially the primary or sole basis for that finding. The first arbitrator's ruling was somewhat broader, saying that there had been developments generally in the NLM, both in their law, rulings and statements by various courts, trial court-level courts, about the importance of these documents and their proceedings, and also developments just around the country that have shown how important this was. But in addition to that, also the Department of Justice request certainly played a large role in that decision. Would it be correct, though, to say that that particular arbitrator's ruling, which is obviously based on the Supremacy Clause, says when the DOJ comes in and, using its federal powers, says don't destroy the records, you know, we're talking about apples and oranges here, there's destruction versus release. That arbitrator's ruling doesn't say anything about releasing the records, does it? Or address that in any way? No, in no way. It simply stops the city from destroying them. That's correct. It simply requires or says the city is not required to destroy those documents, and therefore they're there, and so if we must release them, then they must be released, is essentially what that leaves us with at this point. Now, in addition to the CBOs, the PLRA also does not exempt police misconduct records from foreign disclosure. And the issue whether the preliminary injunctions were erroneously entered because the unions have no likelihood of success on the PLRA claims is also squarely before this court. In the Circuit Court, the unions vigorously pursued preliminary injunctions based both on their CBOs and on the PLRA, and they succeeded in obtaining injunctions based on both grounds. In fact, the only basis for enjoining records that are more than four years old is in the PLRA and not in the CBOs. And validating the injunctions requires overturning both the PLRA and the CBO basis underlying them. And the union's request before this court to ignore the PLRA basis of their injunctions is disingenuous and opens the door to unending litigation of this issue. The unions wish to avoid this court's review of the PLRA claims because they are utterly lacking in merit. This court has already held in Watkins that the PLRA does not exempt police misconduct records from foreign disclosure. And Watkins relied on Section 11 of the PLRA, which instructs a court to construe the PLRA so as not to diminish the right of access to records under other statutes, such as foreign. And since Watkins was decided, the General Assembly amended Section 11 to expressly state that the PLRA exempts from disclosure under foreign only performance evaluations. And this court held in Gekas and in Watkins that police misconduct records are not performance evaluations. Judge Flynn, you know, he's a very bright man and a deep thinker. And I'm sure he was familiar with Watkins and Calvin. He seems to want everyone to know that this preliminary injunction was in aid of arbitration. Can you give us insight into that in any way? Certainly, Your Honor. In his explanatory order, Judge Flynn stated his view that the injunction was in aid of arbitration. But even that explanatory order references back to the original order, the original injunction. It doesn't change the terms of the original injunction. And, in fact, it even references expressly the original injunction's requirement that the city not release documents that are older than four years. There is no basis in the CBA's for that limitation of the four years. That only comes from the PLRA. And the original order that granted the injunction spoke to the likelihood of success on the merits of both the PLRA claims and the CBA claims and expressly stated in Paragraph 7 that the maintenance of the status quo was required to allow the use to pursue both the claims under the PLRA and the CBA and state proceedings on both of those issues to allow proceedings to occur in the DOL or the Department of Labor on the CBA claims and before they're arbitrated on the CBAs. So it's clear that the original order granted the injunction on both grounds and that even though Judge Flynn characterized it as an injunction in aid of arbitration, that he did not change the terms of the original order. And the original order actually enjoined release of these documents on both grounds. And what really should not happen here now is to allow the unions to go back into the Department of Labor and pursue their claims and if they're granted a private right of action to come back to court and now say, now we want a preliminary injunction based on our right of action under the PLRA. That issue is here before the court. They litigated that issue already. They received a preliminary injunction on that issue and we shouldn't be subject to continual litigation on that issue that will keep all of this up in the air for an interminable amount of time. Counsel, let's go back to the CBAs. What is your best case? Well, specifically to begin with, the NRA Supreme Court has been clear in cases such as the Asimov decision that we cite that an arbitrator will not impose an injunction on the plaintiff. that violates public policy. That's a basic premise of law. And here in Calvin, the city argued in different factual circumstances but a somewhat similar argument that the documents, which were also summary lists of information from these particular records, that the list that issued had only existed because courts had ordered their creation, a guarantee to the city that they would not be subject to public disclosure and that the city did not have to maintain them after those litigations were ended. But then there was a court order that was sought and obtained to preserve those records. And the city argued the only reason that these are still around is because of this preservation order. These are public records, so these shouldn't be disclosed under FOIA. There were assurances that we would not be disclosing these publicly. And this court said, well, that doesn't matter. What matters is that they are public records in the possession of a government entity and there's no exemption under FOIA for them. For that reason, the city has to produce them under FOIA. The same is true here. There's no exemption that the unions have cited or that even Judge Flynn cited to that exempts records that are subject to a CBO or purportedly have a breach of a CBO from disclosure. For that reason, the city is subject to an obligation to comply with its FOIA duties and produce those documents. And the arbitrator cannot order the city to destroy the documents that are subject to a pending FOIA request that requires the city to produce those documents. One of the focuses of this case, all right, is we have to realize we've got an interlocutory appeal from an injunction. We don't do a lot of those, all right. And they take on a different cast than when we have to review a case after it's been adjudicated fully on the merits. Injunctions come in a lot of different flavors. In this one, you could say this is one of those where the judge is saying everybody stand still, just freeze, don't do anything that might harm someone else until I get a chance to resolve this on the merits. Now, according to the status report, Judge Flynn has not resolved this on the merits yet. There have been a lot of things going on. But let's say, you know, we were to determine or we were to agree that you've got a thousand percent chance of success on the merits, all right, that we agree with you on that the CBA doesn't bar it, you know, Labor Board doesn't bar it, et cetera, et cetera. Isn't one of an analysis that we have to put in this, but still, once these things are out, they're out. And if we're wrong, it cannot be undone. That's the problem with this kind of an interlocutory appeal from an injunction. Where does the part of the balancing test? I'm sorry, this is a long question. One part is likelihood of success, the other part is irreparable harm. Right. Even if we agree with you, if we're wrong, there's harm to the people who are affected by the release of the records. Sure. Where does this all fit together? Well, if I could take that in a couple of steps. Sure. To begin with, there are multiple prongs that the unions seeking the injunctions had to establish to receive their injunctions. Irreparable harm is certainly one of those prongs. The likelihood of success under merit is another one. And even if there is irreparable harm, if there's no likelihood of success under merit, then they're not entitled to the injunction, and that's why we're here today. But speaking to the harms or the potential harm, it was really up to the General Assembly to determine, as a matter of public policy, what is available to the public. And the General Assembly said public records that affect, that go to the public business of the government, if they're in the possession of the government, the government has them, uses them, controls them, they must be disclosed. And in negotiating the CBA, the parties to that CBA, and this is true, it's in the case law, are presumed to know the law, and their CBAs are subject to the law. And so even if those documents will go out, to the extent that the law and public policy trumps that private agreement, then the harm is really the equity and the balance of that has already been decided by the General Assembly in passing that law. So then you're saying that there's a weighing between the harm to the officers versus that to the public? I don't believe that's required here, because the only issue that we've raised on appeal is the likelihood of success under merit. We've never challenged the idea that the officers demonstrate a potential for irreparable harm. All we've challenged is that they could not establish the prong that there is a likelihood of success under merit. I'm sorry, I was saying to the extent that one were to consider the issue of the balance of interest or the interest, that the General Assembly has always spoken as to the supremacy of the public interest in the disclosure of public records that are maintained by the government. I think in the status report, or at least somebody is suggesting that the case might be moved. I know it's not the city, but what is your position on that? I believe the AFOP's status report in its final sentence suggested that this appeal is essentially moot, is what they said. I'm not sure what that means. The fact of the matter is that injunctions remain in place and the city remains subject to contempt if we were to release these documents. So until those injunctions and that contempt threat go away, it's not moot. And to the extent that the unions are taking a different approach now and say that it is moot, if that's their position and this court agrees, then there needs to be an order vacating the injunctions. Otherwise, it's not moot. That's the only way that it could be moot. Is Judge Flynn taking a position that this may be moot? I haven't been before Judge Flynn personally. The city has been, as have the other parties, keeping him apprised. But I think Judge Flynn has been careful because this appeal divests some of the jurisdiction over the proceedings, I believe, until it's resolved. All of the proceedings? No, it's over the issue of the injunction that's up on appeal. Any other? I know I have extra time, and I'm welcome to answer any other questions. But otherwise, the city would respectfully ask that this court vacate the injunctions, and I'll reserve my time for rebuttals. Thank you. The Chicago Tribune. Good morning. My name is Jim Clank. I represent the Chicago Tribune. And I'd like to start out by addressing each of the questions that were asked. And I'd like to start with the one about the injunction, deciding it now, and standards and the like. The issues in this case involve statutory construction and statutory construction only. The parties agree the issue is de novo review. That means the court can decide it. There are no facts that would be generated in the record on remand in any proceeding that would bear on the determination of those legal statutory issues. This case is not moot because there is an injunction in place now. And if you look at the FOP status report where they made that suggestion, read the paragraph right before it, paragraph 17. It says there will likely be proceedings to vacate or confirm an award. And if that's true, it will go on and on in the trial court and appeals of that nature. There is a special reason in this case why the case should be decided now. That special reason is in the Freedom of Information Act. When lawyers stand before the court and talk about that act, they recite the importance of that act in governance, informed decision-making, monitoring behavior. All of those considerations apply. But if you read Section 1 of the Act, it twice says that matters must be resolved expeditiously. And the Freedom of Information Act has a specific provision that says that you must give precedence to these in the court's calendar. That is the engine of our democracy. What Judge Flynn did below is he put the engine off on a siding and made a collective bargaining agreement in proceeding in the labor department, in effect the caboose, the engine of the train. And that flies in the face of those provisions about expeditious treatments deciding now. There is no exemption. The court should ask the plaintiffs. There is no exemption under the Freedom of Information Act that would justify withholding of the records. It permits this. What the judge in effect has done. What's your best case argument for that statement, counsel? I would read Calvin. I would read Blagojevich. In fact, Blagojevich has responded to the question that the justice raised earlier. That's a case where the former governor went into court and said, hey, I can't disclose these records because there's this other provision. It happened to be a grand jury subpoena and I'm not supposed to do it. In a very erudite opinion, Justice Stegman said, not true. We are the courts. I am empowered to follow the statute. The statute says simply, is it a public body? Is there a public record? Is there an exemption that would apply? Because if there were no exemption, Stegman's reasoning, which is right and in line with Calvin and Watkins, the documents must be produced. That is the case here. That is the case here. The court raised the question, well, how does this relate to arbitration? We're not interfering with any rights of arbitration. We're getting our documents. If you are saying that there's something wrong that they have to preserve the documents so that might be a remedy so they might be destroyed, they can't make a private contract to do that. And if you look at the cases cited on page 15 of our brief, opening brief, it's like you can't make an agreement between a public body and a private contractor to make something confidential, which is a public document. Is there anything in the CBA that are at issue that states a public policy prohibition, if you will, to an arbitrator's decision? And I think one of the cases that's being relied on, the court looked to the agreement itself and found such a provision. First, I confess I'm not a party to the collective bargaining. And my knowledge is not as great. I believe that near the end, I think it's in section 33 or one of the provisions near the end said that public policy is about enforcement.  I'm sorry, I'm embarrassed I don't know. So not only is this pure statutory construction, and that should be the end of the matter, not only do you have the Freedom of Information Act, but you also have a flexion point in our history here in the community where these documents are critical to the issue that's burning up our city. And I didn't mean to make a pun there. There is intense interest in this conduct given the events since the injunction. Laquan McDonald was shot a week before this action was filed. Since then, you've had a cascade of events. Police superintendent removed. State's attorney career came to a quick end. The public interest is important. Now we have the DOJ investigation. It is important for the press and the people that there's access to these CR files and records, the old ones in particular. We know that over time, leopards don't change their spots is perhaps one way to look at it. And folks with a history of records create a problem. Yesterday, there was another article about Commander Evans in the front page of the newspaper. And we talked about Commander Evans in our briefs a year and a half ago. Here's a man with 20 complaints since 2001. The city's paid $225 million to settle claims for him. And he's in the paper again because they can't fire him. You realize that we're limited to the record below. I realize that. But I use that as hypothetical. This is what's going on in our communities right now. And in the record, I did include the information about Commander Evans. The only new thing is that they weren't able to fire him. And I hope you understand why I'm asking this question because I was the author of Watkins. So you understand that I understand the Freedom of Information Act. I do. I do want to make clear that any ruling that we do here doesn't impact as to the truthfulness. We're not here to decide anything about the complaints. I understand that. I know that the court is well-versed in that. That's why I've not talked a lot about that. The time is right now and the community needs the records. Let's look at the alternatives. Your Freedom of Information Act is certainly a strong argument for you. Let's just sort of look at the alternatives. Let's say the court says that a case should go back and see Judge Friend. What will happen then? This case will go on and on for a number of years because there will be a ruling down below. Who knows when that will be? Even if we act expeditiously, there will be an appeal then. And I'm sure there will be an appeal after that. These are all on statutory construction issues. And during that time, under this injunction and under the proceedings, there will be no disclosure of this information. And now is when the public is interested in it. Who knows what it will be in the future? So I respectfully request that the injunction be vacated and we get on with it. I'd be happy to answer any questions the court has. Mr. Klink, let me sort of respond to the comment you just made or ask you a question based on the comment you just made. Sure. As I mentioned earlier, this is an interlocutory appeal. Why doesn't any party file? If you're so certain of the merit of your position or the city is, then what you do is you move for summary judgment and get in front of Judge Flynn so he can resolve the case in full on the merits. Because the best we can do is to say, all right, there is a 1,000 percent chance of likelihood of success on the merits. That outweighs any harm to the police officers. Therefore, the injunction is reversed. Then he still has the case, but then he has our guidance at least. I'm glad you asked that question. Because I said we wanted to file a motion for summary judgment at the last status hearing before him. He's not ready yet, according to him. He's going to wait until it's all over. When it's all over. I want to get to that. First of all, we have a motion to reconsider whatever this pending arbitration is. Then there may be litigation in response to that. There's already one petition to vacate some award down there. Then we have a Labor Department proceedings. Because, remember, those proceedings have been stayed as well. And those have to be resolved. And I suppose on Judge Flynn's reasoning, the Labor Department could file a complaint against the city, under the statute, to do something about destroying records. Those records still end in sight. That's why we're here. We need resolution to make the Freedom of Information Act meaningful. You know, when the country was founded, Madison said, and he said it right, he said, you know, a popular government without popular information or the means of requiring it is but a tragedy, a prologue to a tragedy, or perhaps a farce. Information public needs to know now. With all respect, we ask the injunction be vacated. Thank you very much. Thank you, Counsel. Good morning. May it please the Court, my name is Pasquale Fioretto, on behalf of the Appleby Fraternal Order of the Police, Chicago, Lodge 7. To start with, it's important to remember what this case is not about.  It is a case that is not about the police. It is not about the Pond McDonald. It is not about the burning of our beloved city. It is not about the removal of a superintendent. And it certainly is not about what's going on in the community around us. What's in front of this Court at this time is the same issue that was in front of Judge Flynn both in December of 2014 and in May of 2015, and that is whether or not a preliminary injunction in aid of arbitration should have been issued by Judge Flynn. What the appellants fail to acknowledge is that there is also a strong public policy argument to be made about favoring labor arbitration. In fact, favoring labor arbitration in Illinois and the maintaining of the status quo is actually what is set forth specifically under the Illinois Public Labor Relations Act. It is another statute, just like FOIA, just like IPRA, that needs to be read. And specifically, it states, quote, it is the public policy of the State of Illinois that where the right of employees to strike is prohibited by law, it is necessary to afford an alternate, expeditious, equitable, and effective procedure for the resolution of labor disputes. For the public sector peace officers, binding grievance arbitration is the quid pro quo of no strike. This fosters labor stability and allows the agreed upon mechanism for the parties to resolve their disputes. Mr. Fiorina, are you saying that if this case was not about police and firefighters who are not allowed to strike, but rather it was about public works union workers, that somehow the fact that they are not allowed to strike gives them extra bargaining power vis-a-vis the rights of the public? I'm not saying that, Your Honor. I'm just saying that there's a strong public policy in favor of deferring to the grievance and arbitration provision once there's a collective bargaining agreement in place and once there isn't a grievance or grievances that arise under that collective bargaining agreement. And that's exactly what Judge Flynn found in this case. First, he determined that a collective bargaining agreement existed and that the parties had an agreed upon method in which to resolve the dispute. Those are two crucial facts that are not in dispute. A contract exists and the grievance is fell within the agreement. Judge Flynn properly found that it's the arbitrator's role to resolve the underlying dispute and ultimately to give a remedy, not the judge. What the judge has done is maintain the status quo by issuing the injunction, giving him the opportunity then to review. Was it his goal then? I mean, what's before the arbitration is a violation or a purported violation of the CBA. What's not before the arbitration is the interplay with the Freedom of Information Act. Is that correct? That's correct, Your Honor. So what was Judge Flynn's intent to wait to the arbitration and then he would balance? Or what was going to happen? I can't speak for his actual intent, but I can surmise when he issued the stay, he made a determination that whether or not, A, there was a violation of the contract, and, B, what that remedy should be is something that the court, the trial court, retained jurisdiction to review to make sure that that ruling, both whether or not the contract was violated and whether or not the remedy that may have been issued was appropriate, was subject to court review. That's the whole purpose behind deferring the matter to a grievance and arbitration proceeding. So he would decide, and we did have at one point an award that said that the document should be destroyed, right? Or at least that the city violate it. It's interesting you raise that, Your Honor. The interim award that was issued by Arbitrator Rommel specifically found that Section 8.4 had been violated. Had been violated by the city. Because of its failure to destroy. Exactly. Because of its failure to destroy over the past 30 years documents that should have been destroyed, pursuant to what amounts to a document retention policy. Section 8.4 is a document retention policy, or a document destruction policy, that was negotiated by the parties to the collective bargaining agreement. It had been in place for over 30 years. It had recently been renegotiated and approved by the 50-member aldermen in the city council and subsequently signed by the mayor. So the destruction policy itself has been found at least by the city council, and at this point there's no case law that indicates that the destruction policy found in Section 8.4 is somehow illegal or against public policy. But isn't that what's sort of before us today in determining whether the city has a likelihood of success on the merits? With all due respect, I don't think that's what's in front of this court today. I think what's in front of this court today is what was stated earlier, whether or not Judge Flynn erred when he issued the stay. And the decision was, did the lodge have a likelihood of success on the merits of its grievance? And I would propose to this court... Of the grievance. Exactly. And I would propose to this court that not only did the lodge have a likelihood of success on the merits, it succeeded on the merits. It won in the interim award. Judge... The judge didn't have to go... I'm sorry. The judge didn't have to go farther and ask whether or not that you would be... It's your lawsuit before him, right? I lost in front of Judge Flynn, yes. You brought the suit. Would he not have to have gone farther and said you would have a likelihood of success in enforcing any award that was in your favor? I don't think so, Your Honor, because I think what happens is when the judge issues a stay pending arbitration, the judge has an opportunity to then ask those questions and engage in that investigation after the award is entered. Had Judge Flynn released or allowed the documents to be released, then the arbitrator would not have had the full range of remedies that may have been available to the arbitrator. Now, it's important to note that even though the arbitrator revisited, Arbitrator Rommel revisited his decision and eventually found that the grievance was denied, he still found that Section 8.4 had been violated, that 8.4 was there to be read, and that the city had not been complying with that provision for years. Unfortunately, what Judge Rommel determined was the public policy argument that the city had raised had now brought something to the forefront that did not exist when Arbitrator Rommel issued his interim award. And it's important to keep the timeline in order. The grievances were filed in 2011 and 2012. The arbitration to demand arbitration over those grievances were filed shortly after that. The matter had already been scheduled for an arbitration hearing in February of 2015 when the city, for the first time in October of 2014, notified the Lodge that they were releasing the underlying lists of the CR files, which, by the way, were being released going back to 1967. And admittedly, the city acknowledged in front of Judge Flynn that they had no opportunity to have reviewed those files to see whether or not there was an exemption under FOIA. And I'm going to get to that in a minute in terms of the unwarranted invasion of personal privacy. We believe, as we argued in front of Judge Flynn, that some of the documents contained both in the lists that the judge stayed in December of 2014 as well as the underlying CR files in May of 2015, may contain some allegations of off-duty misconduct. And those allegations, even in Watkins, later in Gekas, Gekas was not willing to expand the ruling in Watkins. What's relevant, for purposes of turning over documents under FOIA, are CR files that delve into the public duty of that police officer. Mr. Fiorillo, I represented local governors and police departments for 20 years. We fired and disciplined police officers once in a while for off-duty conduct because they were under a duty to obey the law, et cetera, et cetera. You know the drill. Yes, sir. All right. How is that consistent with what you just said? Because of the nature of their function in enforcing the law, what they do off-duty can subject them to discipline and therefore would be in the public realm, wouldn't it? What they do off-duty may subject them to discipline. And that's the point. All the cases, the seminal cases that the appellants rely on, Gekas, Watkins, even Calvin, they were eventually remanded back to the trial court. And they were remanded specifically, at least two of them were remanded, Gekas and Watkins, to determine whether or not there were any exemptions as a result of off-duty versus. Well, Watkins was remanded so that the trial court could determine whether there was any personal information in the files that should not be disclosed. Correct. It was pretty narrow. And the trial court never reached that, those types of issues. Correct. The complaints dealt with off-duty or something else because the injunction came into place. Right. But Gekas did state affirmatively that they were not prepared to extend the ruling in Watkins in terms of off-duty misconduct. That's the role that the trial court plays. What's different about this case is all the other seminal cases that are relied upon stem from Freedom of Information Act claims, where there was a specific requester who had asked for specific limited information on behalf of a specific limited public employee or two. Those requests were denied by the public employer. As a result of that, the requesters then took their administrative appeal, they were unsuccessful, and they filed the lawsuit seeking to get compliance and having those documents turned over. That's not what we have here. There is no procedure, no mechanism currently under FOIA that would allow a public employee to protest documents that are going to be turned over, certainly documents that existed over 50 years ago, which may or may not impact the ability of a police officer to perform his or her duties. That's where IPRA comes into play. IPRA does have a specific provision found in Section 8 in which a public employer has to make a determination as to whether or not the personal record that is being released contains an exception. And one of that exceptions is whether or not it contains disciplinary reports, letters of reprimand, or other records which have to be deleted or not turned over if they are more than four years old. But doesn't the Personal Records Review Act also have a provision that says it shall not be true to diminish the right of access to records otherwise provided by law and therefore you hit little arrow points over to FOIA? Correct. As to what FOIA means. But FOIA also has a provision which was touched upon earlier and that is the unwarranted invasion of privacy. We believe that some, we don't know which ones because they're too difficult to identify, but we believe that some of the lists, some of the CR files that are contained in the documents that were going to be released do not have any impact whatsoever on a police officer's ability to engage in his or her performance. And I don't think by any stretch of the imagination, just because somebody becomes a public employee, their conduct 24 hours a day. I mean, if the injunction is vacated, can't that, those types of things, should they have basis be determined before the documents are released? Exactly, Your Honor. They should be. But I'm not sure there was a mechanism in place for that to have happened, Your Honor. But you read your lawsuit and, you know, anyway, okay. I think it's the procedure that needs to be respected here and we believe that Judge Flynn properly issued the stay to let the grievance arbitration run its course. Now, I believe what we said in the report that we filed with the court several weeks ago is that it's coming to an end and the matter is almost moot because at some point there is going to be a determination, a final determination by Arbitrator Rommel. As this court is aware, when Arbitrator Rommel issued his April 28, 2016 final award, the Lodge did file a motion for reconsideration and or clarification similar to the motion for reconsideration that the city filed when Arbitrator Rommel issued his interim award. And in that final award, Arbitrator Rommel rather says, if not for the Department of Justice coming in, if not for the Department of Justice issuing letters to the city saying, hold off, don't destroy any documents, he would have probably accepted his interim award as final. But FOIA is in place and DOJ did make that request. And I still don't see how the arbitrator's decision would be able to prevail over FOIA. I mean, I'm still failing to see your argument. So, Your Honor, let me answer it this way. There has always been a provision in Section 8.4, which is the document retention program, which specifically states it has a litigation exception. Any documents that relate to litigation, pending litigation or possible litigation, will not be destroyed. One of the rulings of Arbitrator Rommel in his interim award was not only did he find that Section 8.4 had been violated, but as part of his remedy, before the documents were set to be destroyed, he instructed the parties over a 60-day period to sit down and try to determine which documents fell under the litigation exception. The parties tried doing that, albeit unsuccessfully. When the parties returned back to Arbitrator Rommel, it was at that point that the city had filed a motion for Arbitrator Rommel to reconsider. When you say litigation, are you talking about this litigation or the arbitration? No, I'm talking about any possible litigation dealing with CR files. So, for example, if there was a CR file that alleged some sort of excessive force and that was being litigated in federal court, any documents related to that litigation could not be destroyed. Oh, so you're talking about it from the destruction as opposed to the release standpoint. Yes. And wouldn't those kind of records be subject to discovery in the federal civil rights excessive force case anyway? Yes, Your Honor, they would be. Let me backtrack about 10 minutes ago when you were talking about sort of calling through these ancient CRs to determine which ones might finally presume. Let's not talk about this in the abstract. Give me an example of what one of these things would look like that would be so destructive if it were released to somebody's interest. For example, I'm a police officer. I mow my lawn. I accidentally mow over my neighbor's plants. His what? His plants. The neighbor has a right to file a complaint, however frivolous, however unfounded. That's going to be a permanent mark on my record. I'm at a family function. Thanksgiving. We're Sicilian. We talk a lot. We argue a lot. One of my family members gets upset because I take a particular position about a political event that's coming up. They file a claim with my employer. I'm involved in a domestic issue with my spouse. I haven't paid my child support or my spouse alleges that I don't pay my child support. What bearing whatsoever does that have to do on my ability to be a police officer? Now, how many of those exist, Your Honor, which might be your next question? We have no way of knowing because the city was going to release everything blindly without checking whether or not the allegations of the underlying CR files related to the public employee's ability to engage in his or her public duty. And what part of the FOIA are you relying on for that type of protection? Okay. So the opening paragraph of the FOIA. That is still a public record, counsel. I'm sorry? They are still public records. What are still public records? As you have described. I'm just following up on Justice Rochford's question. Where does the FOIA require that type of parsing that you've just referenced? So it's clear that if there are some documents that are exempt under FOIA and some documents that are not exempt, the employer is clearly obligated to turn over those documents that are not exempt. I'm talking about the exemption that's found in Section 7, which is personal information contained within the records, the disclosure of which would constitute a clearly unwarranted invasion of personal property. Now an unwarranted invasion of personal property is defined as, I'm sorry, of privacy. Thank you. Is defined as, quote, the disclosure of information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information. What the Act does next is somewhat unique. It gives an example of what does not constitute an invasion of personal privacy. That is, disclosure of information that builds on the public duties of public employees and officials. Elected officials also fall under this. That's not considered an invasion of personal privacy. But in your example, the first example you gave was when a neighbor sends a letter to the police chief saying, you know, officer so-and-so ran over my prize-winning gladiolas with his lawnmower and was unrepentant about it. I'll agree that that doesn't touch on his public duties. But if it's sent to the police chief in the normal course of business to the police station, how is that a gross violation of personal privacy to release that? It's not like you're releasing somebody's medical history or their social security number. And I used to advise clients all the time, you know, if you get something in the mail, it needs to be preserved until the Local Records Commission certificate allows you to get rid of it. And I guess that's the point, Your Honor. Again, the focus of this appeal is whether or not the injunction was properly issued as a result of Section 8.4 grievances. Part of what Section 8.4 required the city to do was to have destroyed those documents as you went along. Not to destroy them forever at all times once they exist, because there's a time period in which those documents can be accessed, but it's a legitimate document retention policy. It was properly negotiated by the parties, by the city and the Lodge. Why over 30 years if these documents weren't destroyed, did the Lodge not try to have that enforced? And, Your Honor, that's a great question. And here we are, they're here, they exist, and they're in the city's possession. That's a great question. I don't know whether or not Your Honor has had a chance to review Arbitrator Rommel's interim award, which was attached, but he goes over great lengths of the evidence that was presented at the hearing in which he explained the history and when it was that the Lodge first became aware. The Lodge did not become aware that the documents weren't being destroyed, and this is in Arbitrator Rommel's decision in his interim award until 2011 and 2012 when the Lodge actually filed the grievance. The Lodge was under the impression that for all that time documents were being destroyed. The Lodge didn't pick up the phone or the officers didn't check to see, hey, is my CR file, has it been destroyed? At the time the arbitrator made the ruling that we're discussing, did the City of Chicago have a certificate from the Local Records Commission authorizing it to destroy this category of records after a certain number of years it expired? I don't believe that it did, Your Honor. If it did not, then how would they be able to destroy it other than for the collective bargaining provision? Because I don't think that it would have been contrary to that. I think so long as the City was acting in compliance with it, even though they didn't technically request it, I don't think it would be a violation of either public policy or state law. Speaking of public policy, is there a provision in the CBA that says the arbitrator's award cannot be against public policy? There is a savings clause that's contained in the contract, a savings clause, which basically says that anything found to have been in contrary to state or federal law can't be enforced. So yes, there would be. It cannot be enforced. Correct. And unless there are any other questions, the Lodge will rest on its pleadings.  Thank you, Your Honor. Good morning, Justices. My name is Thomas Plinus. I represent the intervening parties, the sergeants, lieutenants, and captains, bargaining units. I think Mr. Fioretto has done a very good job of articulating our position, and I have nothing more to add to that except one point which the Court has touched on. Remember, the injunction pertains only to, as the courts referred to it today, the ancient records. Any records that have to do with current police misconduct or allegations thereof are not affected by this injunction. So define ancient for me. More than five years. Hardly seems ancient. Okay. Just wanted to say. Okay. Any record greater than five years is what you're … Well, that's what's been enjoined. The release of records more than five years old. And that's all that Section 8.4 of the various collective bargaining agreements deals with. So as the Court determines the scope and impact of whatever ruling it's going to enter, I think it's important to remember just what is being enjoined. So the Tribune's ability to write a story about Commander Evans, I don't think is affected. Given that the, you know, we'll presume for the sake of our discussion that the average tenure of a police officer is about 20 years, maybe even longer, 25, 30, so that they stay on the force and make it their lifetime career. Why would the fact that the record is more than five years old somehow diminish the public interest under FOIA in that the record should be released? I'm not sure that it is. The person still on the force, still working? Well, I'm not sure that it would. What the public may be interested in varies wildly and changes over periods of time. But I think, if I could speculate as to the interest of the public or the Tribune, something that happened involving an officer five years ago is more interesting and more relevant than something that happened 35 years ago. Clearly, those officers are no longer police officers. They're no longer serving the public. They're retired or they're dead. So what interest or relevance, and I understand the act doesn't require relevance, but what interest that would have for the public, I don't know. Well, Mr. Plinus, every day, you know, on our desks, all right, let me give you our perspective, is we get criminal cases where people have been in prison for a long time, and many of them, maybe some of them will say, complain of police misconduct. They were tortured. They were, you know, into confessing to a crime that they claimed they didn't commit. Whether those claims are meritorious or not is another story, and that's ultimately for us to decide. But we deal with a lot of old criminal cases here because of the length of prison sentences, and therefore a claim about a police officer from 1967 or 1972 or 1981 may have some vitality in the real practical world we live in, and I'm asking if you could address that. Each of these Section 8.4 provisions in the contracts, as Mr. Fioretto mentioned, has a litigation exception. If the city gets involved in litigation or files are requested by a plaintiff or defendant in other litigation. I'm not talking about a Section 1983 case that's pending. I'm talking about a criminal conviction where the city had nothing to do with it other than its officers arrested the guy back in 1982. And all I'm saying is if the city is put on notice of that litigation and the request for files pertaining to that arresting conviction are being requested, then they don't have to destroy them under the FOP's contract. And keep in mind the supervisor's contracts don't call for destruction at all. It calls only for it to be purged from the file. What does that mean in real life? What's the distinction? I think the distinction is, or the purpose of the exception, is to keep old files from being used against current officers in evaluations of their job performance, taking into consideration their assignments, promotions, those sorts of things. But nonetheless, the records of the supervisory officers that are purged from the file as opposed to being destroyed are nonetheless kept by the city in some manner. Is that correct? That is correct. And that's what the FOPs are. Thank you very much. Thank you. Does the city have anything in rebuttal? Yes, Your Honors. I have a few points to rebut. If you'll bear with me for a moment. The first one I'd like to start with, though, is this idea that the city announced to the officers that we would release all these documents with personal information with no review. It should be kept in mind, first, that the requested issue from the Tribune and the Sun-Times were for specific summary information that was category-specific, identified categories of information. It wasn't for the entire file. It wasn't for any personal information within those files. That was an issue in this request. But in any event, as Mr. Fiorano just admitted, there is no third-party remedy under FOIA that allows a third party to come in and file an action under FOIA asserting a right to have its information not produced. That doesn't exist under FOIA. And to the extent that the reviewers are now arguing that the PRRA somehow required a review of these documents, this Court looked at that issue in Watkins and set forth, you know, said these are, that generally these disciplinary records must be produced, that they don't fall within the personal information exception to federal disclosure. In any event, the – Personnel. I'm sorry, Personal Records Review Act. And in any event, the unions didn't seek a no preliminary injunction to allow review time to remove this type of information that they're now claiming. And they've never raised this argument on appeal either. And that's why they've raised any argument now that this is a ground to maintain this preliminary injunction. Rather, based on preliminary injunctions, why were enough to preserve all these records so they could completely be destroyed, all of them, no matter how important they are to the public interest? Another thing that I'd like to emphasize is that Mr. Klein has just said that all that was adjourned was release of records that are five years or older. Actually, the injunction bars release of all information that's four years or older. And that again indicates that this is – that the Court based that on the PRRA and not just the CBAs and that both issues are before the Court. And for neither one of the unions, counsel, have we heard any reason to explain why that limitation was put in place if the PRA isn't at issue and wasn't a basis of these injunctions? The second injunction goes broader than the limited information that was first recorded. That's true, Your Honor. The second injunction does go broader. It covers all records. But the actual request that started this, there are a lot of requests out there now. But his complaint that we gave notice that we were going to release all this personal information, I was responding to that specific issue that these were actually – the requests that were given notice at that time that started this litigation were more narrow than give them the word in these files without any reviews. Is it true that they didn't know until 2011, 2012, that these documents – Well, we – the city took the opposite position in the arbitration. That was an issue before the arbitration. But it's hard to believe when the city was producing these documents in litigation, the federal court for decades that the unions had no notice. That was a position that the city took in the arbitrations. The unions take a different position that was disputed. The arbitrator looked at that. That's not really the issue before this court. But the city has maintained that the unions knew that the city had these records for years. Let me ask you to respond to a question I asked a while back. When the arbitrator made his ruling, what was the status of the city's authority under the Local Records Act by virtue of a certificate from the Local Records Commission to destroy these records? Was it, in fact, just simply absent? You know, the certificate said it didn't address it at all? I am unaware of any certificate that exists that has been sought and obtained from the Local Records Act – under the Local Records Act. And the city maintained in the arbitration that the Local Records Act must be complied with in order to destroy these documents. If they've seen those certificates, they usually say, you can get rid of cancel checks after five years. You can get rid of invoices after seven years. Exactly. But I'm unaware of any certificate that was ever sought or obtained. So you've never seen any document to that effect? No, Your Honor, I have not. So if there is no such certificate? That's another indication that these records are still around because we would need that certificate in order to destroy them under the Local Records Act. So what about the argument just made about the purging of records as opposed to the destruction of them? That's true. For the supervisors, the supervisor's language is different in their contract. In Section 8.4 of their contract, it requires purging of databases and information. And the arbitrator interpreted that to not require destruction of the underlying files. But, you know, that is true for the supervisors, but the CBO for the FOP certainly require, or the argument from the FOP was that that language required destruction of the underlying documents. And that's what initially was ordered by the arbitrator in that case. And just briefly, the last thing I'd like to touch on is this idea that we're only dealing with ancient records somehow and that there's no more public interest in them. Although that's not really the question for this court, I would note that the city is constantly subject to claims for wrongful convictions and that those claims don't arise until the convictions are overturned and that those convictions would date back decades. The city has maintained these documents and has needed these documents to defend against that litigation going back decades and also to comply with discovery requests for information going back decades, both for those specific claims and, more broadly, for claims under Monell that require proof or defense of a policy based on practices at the time of those convictions. So there is public interest in these older records and they do need to be maintained for that reason. So if there are any other questions, the city would respectfully ask this court to vacate the injunction. Thank you, counsel. And then the Chicago Tribune. Thank you very much. I'd like to be brief. Lawsuits are decided on facts and what the records are and I wanted to bring the court's attention to page C-168 of the common law record in the first appeal. It contains a copy of a page of the list that we are seeking and that is what the original complaint was about. It has all kinds of redactions on it. We, of course, are seeking an unredacted one. But that's an example of the record and that's how this all started. There is nothing in here about off-duty, on-duty. In fact, it says categories of complaints. Arrestee during arrest, arrestee during arrest, search of vehicle, search of premises without warrant, that kind of thing. And if there was something about off-duty, they've had this list for more than two years, they could have crossed that out and they could say, we have it, if that's an issue. The injunction was broadened, as Justice Rochford noted, and that's just because now there is a per se ban on the release of any CR file more than four years old. Nobody has looked at those files for any other reason, whether it has personal meaning, personal identifying information, and that would naturally occur once this ban was lifted. I wanted to make that point clear. The second point is the claim is that the collective bargaining agreement is a document retention policy. That is not true. Document retention policies are forward-looking documents, how you manage your documents in your municipality. This CBA is a contract to destroy records of police misconduct. That's what it is, plain and simple. Think about it this way. If it was a document retention policy, and I'll change the facts a little, and this was a civil lawsuit, not an FOI case, and in the lawsuit there was a subpoena for records that just happened to have not been destroyed. The city couldn't come in and say, well, I can't produce the records because we have this retention policy and they weren't destroyed. The point is, these are public records, they exist now, and they are not exempt, and we ask that the injunction be vacated so that the public can have access to them, to use them for the purposes for which they're kept to monitor public behavior. This is a systemic thing. This is not just about any officers. It's how does the system work? That's the issue confronting the city now, and the way to make that determination, the way to comment on it, is to look at history and the kinds of information that is on this list that we ask for. Thank you very much for your time. Okay, thank you. The matter will be taken under advisement.